**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KRISTINE PETERSON, et al.,** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **No. 3:15-CV-247-M (BF)** |
| **CITY OF DUNCANVILLE, et al.,** | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge for pretrial management. Before the Court are Defendant Brown's ("Chief Brown") Renewed 12(b)(6) Motion to Dismiss [ECF No. 37] ("Chief Brown's Motion to Dismiss"), and Defendant the City of Duncanville's ("Duncanville") Renewed 12(b)(6) Motion to Dismiss [ECF No. 39] ("Duncanville's Motion to Dismiss"). For the following reasons, the undersigned respectfully recommends that the District Court **GRANT** Chief Brown's Motion to Dismiss [ECF No. 37], and **GRANT** Duncanville's Motion to Dismiss [ECF No. 39].

**BACKGROUND**

Melissa Peterson, Sherry Horne, Kristine Peterson, on behalf of minor child, Kendra Peterson, all individually and as heirs to the estate of Clinton Peterson, and the estate of Clinton Peterson (collectively, "Plaintiffs"), bring this excessive force action under Title 42, United States Code, Section 1983 ("Section 1983"). *See* Am. Compl. [ECF No. 36 at 2]. Plaintiffs also assert that Duncanville violated Texas law, because its officers negligently caused the wrongful death of Clinton Peterson through the use of tangible personal property. *See id.* [ECF No. 36 at 14]; Tex. Civ. Prac. & Rem. Code § 101.021 *et seq.* Plaintiffs state in their Amended Complaint that, at approximately 8:00 a.m. on Monday October 28, 2013, Clinton Peterson attempted to visit the

roommate of his sister, Melissa Peterson, but was advised that her roommate did not wish to speak with him. *See* Am. Compl. [ECF No. 36 at 6]. However, Plaintiffs state that Melissa Peterson was not able to convince her brother to leave the premises. *See id.* [ECF No. 36 at 6]. Plaintiffs state that Melissa Peterson's roommate was inside their home calling 911 to report that Clinton Peterson refused to leave the premises. *See id.* [ECF No. 36 at 6]. Plaintiffs state that Duncanville's police officers arrived on the scene soon thereafter and pursued Clinton Peterson on foot. *See id.* [ECF No. 36 at 7]. Plaintiffs state that, while Clinton Peterson was merely attempting to get away, the police officers, first, unsuccessfully attempted to restrain him with a Taser, and then, fired two rounds, one of which hit Clinton Peterson in the head and fatally wounded him. *See id.* [ECF No. 36 at 7-8]. Duncanville and Chief Brown state in their Answer that the officers shot and killed Clinton Peterson, because he threatened them by pointing at them an object that appeared to be a handgun. *See* Answer [ECF No. 41 at 3].

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the Court evaluates pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive the motions to dismiss, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability

2

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; s*ee also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing FED. R. CIV. P. 8(a)(2)). Moreover, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than mere "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ANALYSIS

### Duncanville's Motion to Dismiss

#### Section 1983

"It is well-established that a city is not liable under § 1983 on the theory of respondeat superior." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Johnson v. Deep E. Tex. Narcotics Trafficking Task Force*, 379 F.3d 293, 308 (5th Cir. 2004)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. "Municipal liability requires proof of three elements: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual

or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Pinedo v. City of Dall.*, No. 3:14-CV-958-D, 2015 WL 221085, at *2 (N.D. Tex. Jan. 15, 2015) (quoting *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (internal quotation marks omitted)).

"'[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority.'" *Id.* (quoting *Valle*, 613 F.3d at 542; citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). A custom is a "persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy[.]" *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). Plaintiffs' Amended Complaint alleges that Duncanville had the following customs or policies: (a) failing to properly train and supervise its police officers in the use of deadly force, including training and supervision regarding when deadly force should be used; (b) providing its police officers with excessively broad discretion in both the use of force and the amount of force used without considering less drastic alternatives; (c) permitting and encouraging the use of force to intimidate, coerce, or subdue individuals without provocation; and (d) failing to properly and timely process and respond to civilian complaints that alleged constitutional violations, which created an atmosphere of approval of the type of constitutional violation complained of by Plaintiffs. *See* Am. Compl. [ECF No. 36 at 11-12].

Duncanville argues that Plaintiffs failed to adequately allege a policy or a custom. *See* Duncanville's Br. [ECF No. 40 at 6-7]. As Duncanville points out, Plaintiffs' allegation that the

4

custom or policy "is established by other complaints of police misconduct and lawsuits" is conclusory, and Plaintiffs' Amended Complaint fails to factually identify another incident. *See* Am. Compl. [ECF No. 36 at 12]; Duncanville's Br. [ECF No. 40 at 7]. "'A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority.'" *Pinedo*, 2015 WL 221085, at *6 (quoting *Renfro v. City of Kaufman*, 27 F. Supp. 2d 715, 717 (N.D. Tex. 1998); citing *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir. 1989)). Here, Plaintiffs do not allege that the actors involved, namely, the officers who were involved in the shooting of Clinton Peterson, were given official policy-making authority. *See* Am. Compl. [ECF No. 36]. Therefore, Plaintiffs' allegations regarding the single incident of misconduct involving Clinton Peterson fail to establish a policy or custom, and Plaintiffs' Section 1983 claim against Duncanville should be dismissed on this ground. *See Pinedo*, 2015 WL 221085, at *6 ("Pinedo does not point to any prior instances of Dallas Police Officers using excessive force, or committing wrongful arrests, that would indicate a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. Nor does he allege any facts that show what training [the] police officers have received and how that training is insufficient. A mere allegation that a custom or policy exists, without any factual assertions to support such a claim, is no more than a formulaic recitation of the elements of a § 1983 claim and is insufficient to state a claim for relief."); *Hatcher v. City of Grand Prairie*, No. 3:14-CV-432-M (BN), 2015 WL 181763, at *7-8 (N.D. Tex. Jan. 14, 2015) ("Plaintiffs fail to allege any factual basis to support a particular policy or custom-formal or informal-that led to the constitutional violations alleged in their complaint. . . .They do not allege facts to establish any other instances where an individual has been

shot or tasered for noncompliance with officer commands alone or any other information to suggest

that any such conduct constitutes an unwritten custom of Grand Prairie. . . . Plaintiffs' allegations

are about one incident involving Officer Bement, which they allege resulted in a constitutional

deprivation, from which Plaintiffs ask the Court to infer that Grand Prairie had a *de facto* policy or

customary practice of allowing excessive force by its peace officers or that Grand Prairie engaged

in ratification by inaction.").

Duncanville also argues that Plaintiffs fail to adequately allege a policymaker. *See*

Duncanville's Br. [ECF No. 40 at 7-8]. Plaintiffs must adequately plead the identity of a policymaker

with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir.

2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be

one who takes the place of the governing body in a designated area of city administration[.]"

*Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)). "City

policymakers not only govern conduct; they decide the goals for a particular city function and devise

the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their

performance." *Bennett*, 728 F.2d at 769. "[The Court's] analysis must also take into account the

difference between final decision making authority and final policymaking authority, a distinction

that [the Fifth Circuit has] recognized as fundamental[.] . . . [D]iscretion to exercise a particular

function does not necessarily entail final policymaking authority over that function." *Bolton v. City

of Dall.*, 541 F.3d 545, 548-49 (5th Cir. 2008) (citations omitted). *See also Jett v. Dall. Indep. Sch.

Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining the distinction between final policymaking

authority and mere decision making). "Whether a city official is a final policymaker is a question of

state and local law." *Pinedo*, 2015 WL 221085, at *4 (citing *Praprotnik*, 485 U.S. at 124).

In addition, in order "[t]o state a claim under § 1983 against the City, [Plaintiffs] . . . must plead facts that enable the court to draw the reasonable inference that actual or constructive knowledge of the custom is attributable to the City's final policymaker." *Pinedo*, 2015 WL 221085, at *7 (citing *Valle*, 613 F.3d at 542; *Webster*, 735 F.2d at 842).

> Actual knowledge may b[e] shown by such means as discussions at council meetings or receipt of written information. . . . Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.

*Okon v. Harris Cnty. Hosp. Dist.*, 426 F. App'x 312, 316 (5th Cir. 2011) (citations and internal quotation marks omitted). "[Plaintiffs] must also show that 'a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'" *Pinedo*, 2015 WL 221085, at *7 (citing *Bd. of Cnty. Comm'rs*, 520 U.S. at 411). "[I]n order to properly plead a claim based upon alleged City customs of deficient training, Plaintiffs must plead facts supporting deliberate indifference by the City's final policymaker to a specific inadequacy in the City's training of [] officers." *Flanagan v. City of Dall.*, No. 3:13-CV-4231-M (BK), 2014 WL 4747952, at *14 (N.D. Tex. Sept. 23, 2014).

Plaintiffs allege that Chief Brown is the official policymaker for Duncanville. *See* Am. Compl. [ECF No. 36 at 13]. Plaintiffs allege that the deployment of dangerous and deadly weaponry against unarmed, non-violent suspects is an official municipal policy and custom of Duncanville, because Chief Brown tolerated and acquiesced to such conduct. *See id.* [ECF No. 36 at 13]. Plaintiffs allege that Chief Brown had policymaking authority, both explicitly, through Duncanville's written ordinances, and implicitly, from the delegation of authority and the customs and practices of

Duncanville's City Council. *See id.* [ECF No. 36 at 13]. Plaintiffs allege that Chief Brown had the authority to establish binding city policy with respect to matters related to the police department and to make adjustments for changing circumstances, and that this authority is set forth in Duncanville's ordinances which delegates all policymaking authority for the police department to Chief Brown. *See id.* [ECF No. 36 at 13-14]. As Duncanville argues, Plaintiffs fail to allege facts that show deliberate indifference. *See* Duncanville's Br. [ECF No. 40 at 5-6]. Plaintiffs also fail to allege facts that show that Chief Brown had actual or constructive knowledge. Therefore, Plaintiffs' Section 1983 claim against Duncanville should also be dismissed due to these deficiencies.

## Texas Tort Claims Act

"The Texas Tort Claims Act specifically states that a person having a claim under the Act may sue a governmental unit, including a city, for damages that are allowed by the Act." *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1008 (E.D. Tex. 1997) (citing TEX. CIV. PRAC. & REM. CODE §§ 101.025, 101.001(2)(B)). Damages against a city that are allowed by the Texas Tort Claims Act ("TTCA") are for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> > (B) the employee would be personally liable to the claimant according to Texas law; and
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021.

Plaintiffs allege in their Amended Complaint that Duncanville's officers "negligently injured

[Clinton] Peterson through the use of tangible personal property." *See* Am. Compl. [ECF No. 36 at 14]. The TTCA "provides that a governmental unit enjoys sovereign immunity for 'a claim arising out of assault, battery, false imprisonment, or any other intentional tort.'" *Butler v. City of Dall.*, No. 3:14-CV-994-B (BK), 2015 WL 8467029, at *9 (N.D. Tex. Nov. 4, 2015) (citing TEX. CIV. PRAC. & REM. CODE § 101.057(2)). Duncanville argues that Plaintiffs' TTCA claim against it should be dismissed because Plaintiffs' "'negligence' allegations clearly arise from intentional acts of the officers in question." *See* Duncanville's Br. [ECF No. 40 at 9]. Plaintiffs' Opposition does not address this argument. *See* Opp'n [ECF No. 45]. "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA. . . . A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Wright v. City of Garland*, No. 3:10-CV-1852-D, 2014 WL 1492356, at *10 (N.D. Tex. Apr. 16, 2014) (internal quotation marks and citations omitted). While a plaintiff may overcome immunity if the claim arises out of the city's negligence in supervising, training, or entrusting tangible property to an officer who engaged in intentional conduct, Plaintiffs do not allege facts showing that their TTCA claim arose from Duncanville's negligence in supervising, training, or entrusting tangible personal property to its officers. *See* Am. Compl. [ECF No. 36 at 14-15]; *Russell v. City of Hous.*, 808 F. Supp. 2d 969, 975 (S.D. Tex. 2011) (citing *Centamore v. City of Hous.*, 9 F. Supp. 2d 717, 725 (S.D. Tex. 1997); *Young v. City of Dimmitt*, 787 S.W.2d 50, 51 (Tex. 1990)). Therefore, Plaintiffs' TTCA claim against Duncanville should be dismissed.

<u>Punitive Damages</u>

Duncanville further seeks dismissal of Plaintiffs' claim to recover punitive damages on the

ground that it is immune from punitive damages. *See* Am. Compl. [ECF No. 36 at 15]; Duncanville's

Br. [ECF No. 40 at 9]. Plaintiffs' Opposition does not address this argument. *See* Opp'n [ECF No.

45]. "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport*

*v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Furthermore, Section 101.024 of the Texas Civil

Practice and Remedies Code "does not authorize exemplary damages." Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ.

Cᴏᴅᴇ § 101.024. Therefore, Plaintiffs' claim to recover punitive damages from Duncanville should

be dismissed. *Cf. Owen v. Stmicroelectronics, Inc.*, No. 3:15-CV-1186-B, 2016 WL 2757368, at *7-8

(N.D. Tex. May 12, 2016) ("[P]unitive damages are unavailable under the ADEA. . . . The Court

GRANTS STM's Motion to Dismiss Owen's claim for punitive damages and DISMISSES it with

prejudice.").

### Chief Brown's Motion to Dismiss

Among other arguments, Chief Brown argues that, because he is sued in his official capacity,

and the official capacity claim is nothing more than a claim against Duncanville, the claim against

him should be dismissed because it is redundant. *See* Brown's Br. [ECF No. 38 at 6]. Plaintiffs'

Opposition does not address this argument. *See* Pls.' Opp'n [ECF No. 45]. "When a plaintiff sues

a county or municipal official in her official capacity, the county or municipality is liable for the

resulting judgment and, accordingly, may control the litigation on behalf of the officer in her official

capacity." *Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996). Since Plaintiffs already named

Duncanville as a party to this lawsuit, "'no purpose is served by allowing Plaintiffs' duplicative

section 1983 official capacity claims against [Chief Brown] to proceed.'" *Ezell v. Wells*, No. 2:15-

CV-83-J, 2015 WL 4191751, at *14 (N.D. Tex. July 10, 2015) (quoting *Rivera v. City of San*

*Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *6 (W.D. Tex. Nov. 15, 2006)). Therefore,

the duplicative Section 1983 claim against Chief Brown should be dismissed. *See id.* ("Accordingly, the Court grants Swisher County's Motion to Dismiss Plaintiffs' official capacity section 1983 claims against Judge Harold Keeter and Sheriff Burnie Wells. The Court will treat those official capacity claims as claims against Swisher County.").

Section 101.106 of the Texas Civil Practice and Remedies Code provides that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). Therefore, if Plaintiffs are attempting to assert a TTCA claim against Chief Brown in their Amended Complaint, such a claim should also be dismissed. *See* Am. Compl. [ECF No. 36 at 14-15]; *Cunningham v. City of Balch Springs*, No. 3:14-CV-9-L, 2014 WL 4851576, at *7 (N.D. Tex. Sept. 30, 2014) ("The Individual Defendants, as employees of the City, seek dismissal of Plaintiff's state law claims of false arrest and intentional infliction of emotional distress. Because Cunningham filed suit under the Act against the City and the Individual Defendants, the Individual Defendants as employees must be dismissed immediately once the governmental entity files a motion to dismiss. . . . As the City and the Individual Defendants have filed motions to dismiss, dismissal of these claims against the Individual Defendants is mandatory." (citing TEX. CIV. PRAC. & REM. CODE § 101.106(e)).

### Melissa Peterson's Claims

Duncanville and Chief Brown both argue that Melissa Peterson's claims against them should be dismissed, because she lacks standing. *See* Duncanville's Br. [ECF No. 40 at 9-10]; Brown's Br. [ECF No. 38 at 6-7]. They argue that the right to bring a Section 1983 claim is personal and does not accrue to a relative, and also that she is not within the class of persons with standing to bring a

wrongful death claim under Texas law. *See* Duncanville's Br. [ECF No. 40 at 9-10]; Brown's Br. [ECF No. 38 at 6-7]. Plaintiffs failed to address this argument in their Opposition. *See* Opp'n [ECF No. 45]. With respect to Plaintiffs' federal claims, "[c]onstitutional standing requires that the plaintiff personally suffer[] some actual or threatened injury that can fairly be traced to the challenged action and is redressable by the courts." *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007). In addition, with respect to Plaintiffs' state claims, such "[a]n action to recover damages . . . is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." TEX. CIV. PRAC. & REM. CODE § 71.004. Therefore, the claims of Clinton Peterson's sister, Melissa Peterson against Duncanville and Chief Brown should also be dismissed on these grounds.

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the District Court **GRANT** Chief Brown's Motion to Dismiss [ECF No. 37], and **GRANT** Duncanville's Motion to Dismiss [ECF No. 39].

**SO RECOMMENDED**, this 1st day of August, 2016.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

12

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

13