UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KRISTINE PETERSON, et al., § | |
| Plaintiffs, § | |
| v. § | No. 3:15-CV-247-M (BF) |
| ANDY ARMSTRONG, et al., § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge for pretrial management. Before the Court is Defendants' (Armstrong & Edwards) 12(b)(6) Motion to Dismiss [ECF No. 70] ("Motion to Dismiss"). For the following reasons, the undersigned respectfully recommends that the District Court **GRANT** the Motion to Dismiss [ECF No. 70].

**BACKGROUND**

Melissa Peterson, Sherry Horne, the estate of Clinton Peterson, and Kristine Peterson, on behalf of minor child, Kendra Peterson (collectively, "Plaintiffs"), bring this excessive force action under Title 42, United States Code, Section 1983 ("Section 1983"). Am. Compl. 2, ECF No. 36. Plaintiffs also assert that the City of Duncanville violated Texas law, because its officers negligently caused the wrongful death of Clinton Peterson through the use of tangible personal property. Am. Compl. 14, ECF No. 36; TEX. CIV. PRAC. & REM. CODE § 101.021 *et seq.* Plaintiffs state in their Amended Complaint that, at approximately 8:00 a.m. on October 28, 2013, Clinton Peterson attempted to visit Debra, the roommate of his sister, Melissa Peterson, but was advised that Debra did not wish to speak with him. Am. Compl. 6, ECF No. 36. However, Plaintiffs state that Melissa Peterson was not able to convince her brother to leave the premises. Am. Compl. 6, ECF No. 36. Plaintiffs state that Debra was inside their home calling 911 to report that Clinton Peterson refused to leave. Am. Compl. 6, ECF No. 36. Plaintiffs state that the City of Duncanville's police officers

arrived on the scene soon thereafter and pursued Clinton Peterson on foot. Am. Compl. 7, ECF No. 36. Plaintiffs state that, while Clinton Peterson was merely attempting to get away, the police officers, initially unsuccessfully attempted to restrain him with a Taser, and then, fired two rounds, one of which hit Clinton Peterson in the head and fatally wounded him. Am. Compl. 7-8, ECF No. 36.

The City of Duncanville's police officers Andy Armstrong ("Armstrong") and Eddie Edwards ("Edwards") filed their Answer [ECF No. 72] and Motion to Dismiss [ECF No. 70] on June 1, 2016. In their Answer, Armstrong and Edwards contend that Clinton Peterson repeatedly pointed a black and silver gun at the officers. Answer 6-7, ECF No. 72. Armstrong and Edwards state that although the gun was later determined to be a toy, it appeared real to the officers at the time of the incident. Answer 7, ECF No. 72. In the Motion to Dismiss, Armstrong and Edwards argue the following: (1) Plaintiff Melissa Peterson lacks standing to assert her claims; (2) Plaintiffs' claims against Armstrong and Edwards are barred by a two-year statute of limitations under § 16.003 of the Texas Civil Practices & Remedies Code; (3) Plaintiffs' claims against Armstrong and Edwards are barred by qualified immunity; and (4) Plaintiffs' official capacity claims against the individual defendants are redundant of Plaintiffs' claim against the City of Duncanville. Mot. to Dismiss 3-4, ECF No. 70. Plaintiffs filed their opposition on July 6, 2016 with permission from the Court to file their response out of time. Opp'n, ECF No. 81; Order, ECF No. 80. Armstrong and Edwards filed their reply on July 11, 2016. Reply, ECF No. 84.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the Court evaluates pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the

2

plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive the motion to dismiss, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; s*ee also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing FED. R. CIV. P. 8(a)(2)). Moreover, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than mere "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ANALYSIS

### Statute of Limitations

Armstrong and Edwards argue that Plaintiffs' claims against them are precluded by a two year statute of limitations pursuant to § 16.003 of the Texas Civil Practices & Remedies Code. Defs.' Br. 3, ECF No. 71. Armstrong and Edwards argue that while Plaintiffs sued the "John Doe"

3

defendants within the two year limitations period, they identified Armstrong and Edwards for the first time in their Amended Complaint which was filed months after the limitations period expired. Defs.' Br. 3-4, ECF No. 71. Armstrong and Edwards argue that Plaintiffs must sue defendants within the applicable limitations period and exercise due diligence in securing service of process in order to toll the statute of limitations. Defs.' Br. 4, ECF No. 71. Armstrong and Edwards argue that Plaintiffs have failed to timely sue or exercise due diligence. Defs.' Br. 4, ECF No. 71. Armstrong and Edwards also argue that naming doe defendants and then later identifying them did not toll the statute of limitations, because in the Fifth Circuit, naming doe defendants does not toll limitations as to the defendants who are later identified and substituted. Defs.' Br. 4, ECF No. 71. Therefore, Armstrong and Edwards argue that Plaintiffs' claims against them are time barred.

"The statute of limitations on [a] Section . . . 1983 claim is two years." *Gibson v. City of Garland*, No. 3:16-CV-157-L (BN), 2016 WL 5819821, at *7 (N.D. Tex. Sept. 1, 2016) (citing *Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005); *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 250 (5th Cir. 1980)); *see also Shelby v. City of El Paso*, 577 F. App'x 327, 331 (5th Cir. 2014) ("Our cases have consistently held that the statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state. . . . In Texas, the general statute of limitations for personal injury actions is two years." (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993); *Hernandez v. Tisdale*, 548 F. App'x 198, 199-200 (5th Cir. 2013); *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989); *Price*, 431 F.3d at 892; TEX. CIV. PRAC. & REM. CODE § 16.003(a)) (internal quotation marks and alterations omitted)). "The federal standard used to determine the accrual of a section 1983 cause of action is that the cause of action accrues when the

plaintiff knows or has reason to know of the injury which is the basis of the action." *Longoria v. City of Bay City,* 779 F.2d 1136, 1138 (5th Cir. 1986) (citing *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980)).

"The claims against [subsequently] named defendants are [] time-barred unless they 'relate back' to the original filing of the complaint per Federal Rule of Civil Procedure 15(c)." *Whitt v. Stephens Cty.*, 529 F.3d 278, 282-83 (5th Cir. 2008). "[The Fifth Circuit] ha[s] held, however that an amendment to substitute a named party for a John Doe does not relate back under rule 15(c)." *Id.* (citing *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)). *See also Waters v. City of Hearne*, 629 F. App'x 606, 609 (5th Cir. 2015) ("[E]ven if Waters *could* identify and serve Jane Doe with an amended complaint, it would not be enough to overcome the limitations period: the claim against Jane Doe is time-barred by our Circuit's view of Federal Rule of Civil Procedure 15(c). . . . Because Waters did not properly identify officer Jane Doe and name her as a defendant within the limitations period, the district court properly barred Waters's § 1983 claim against Jane Doe." (citing *Jacobsen*, 133 F.3d at 319)). Therefore, "where subsequently-identified defendants are substituted for John Doe defendants-or where new defendants are first named-after the limitations period has run, the Court generally must find that the limitations period should be equitably tolled." *Rogers v. Buchanan*, No. 3:12-CV-2458-M (BN), 2015 WL 5772203, at *2 (N.D. Tex. Aug. 4, 2015).

"Because the Texas statute of limitations is borrowed in Section 1983 cases, 'Texas's equitable tolling principles control this litigation.'" *Id.*, 2015 WL 5772203, at *2 (quoting *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012)). "Texas courts sparingly apply equitable tolling and look, *inter alia,* to whether a plaintiff diligently pursued his rights; litigants may not use the doctrine to avoid the consequences of their own negligence. Federal courts also apply the doctrine sparingly."

5

*Id.* (citing *Myers*, 464 F. App'x at 349). "[E]quitable tolling is available where a plaintiff has actively pursued judicial remedies but filed a defective pleading, as long as the plaintiff has exercised due diligence. . . . [T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Id.* at *3 (internal quotation marks and citations omitted). "When a Section 1983 plaintiff knows or has reason to know of an injury and the cause of that injury-such as arrest by police officers that he believes to be wrongful or use of force by prison guards that he believes to be excessive-the limitations period begins, and he acquires a duty to fully investigate his claims." *Id.* "Simply because a plaintiff later learns-in pursuing his investigation, for example-that a particular defendant also may be liable for his harm does not restart the limitations period as to that defendant." *Id.*

      In their opposition, Plaintiffs argue that the statute of limitations began to run when they became aware of the identities of the persons who inflicted the injury. Opp'n, ECF No. 81 at 5. Plaintiffs argue that the Fifth Circuit cases cited by Armstrong and Edwards are distinguishable from this case, because the discovery rule defers accrual of certain causes of action until Plaintiff knew, or with reasonable diligence, should have known of the wrongful act causing the injury. Opp'n, ECF No. 81 at 6. Plaintiffs argue that, although they obviously knew the injury occurred when Clinton Peterson was shot and killed, Plaintiffs were not aware of the identities of the officers who shot him. Opp'n, ECF No. 81 at 6. In the reply, Armstrong and Edwards argue that the cases relied upon by Plaintiffs state that the limitations period begins to run when a plaintiff becomes aware that he suffered an injury or has sufficient information to know that he has been injured. Reply 2, ECF No. 84. Furthermore, Armstrong and Edwards argue that while Plaintiffs also imply that the discovery rule should toll the running of the statute of limitations, Plaintiffs fail to plead due diligence and

could not do so under the circumstances. Reply 4, ECF No. 84. Armstrong and Edwards argue that Plaintiffs' conduct does not demonstrate diligence in investigating this matter because, the shooting took place on October 28, 2013, Plaintiffs filed suit naming the doe defendants on January 23, 2015, and Plaintiffs took no action seeking to identify the officers involved during the nine months between the filing of the complaint and the expiration of the limitations period. Reply 4-5, ECF No. 84. Moreover, Armstrong and Edwards argue that Plaintiffs apparently did not review or ignored local media reports that contained this information. Reply 4-5, ECF No. 84. In addition, Armstrong and Edwards point out that Plaintiffs do not plead or allege mistake or misnomer. Reply 4-5, ECF No. 84. Therefore, Armstrong and Edwards argue that Plaintiffs present no basis for the Court to equitably toll the limitations period, and their attempt to join them is time barred as a matter of law. Reply 5, ECF No. 84.

As argued by Armstrong and Edwards, the undersigned finds no basis for tolling the limitations period. While Plaintiffs contend that they did not know the identities of Armstrong and Edwards until after the limitations period passed, Plaintiffs provide no explanation as to why, with due diligence, they could not have discovered this information prior to the expiration of limitations period. *See Longoria,* 779 F.2d at 1138 ("The fact that the Longorias took all of this action after the first flood and before the second clearly establishes that they knew of their injury, and were on notice of its cause, at the occurrence of the first flood. . . . At that point, the limitations period began to run and the Longorias acquired a duty to exercise reasonable diligence to discover their cause of action. . . . The argument that the statutory period is tolled until the plaintiff learns that the defendant's conduct may have been wrongful finds no support in the relevant case law." (citing *Timberlake v. A.H. Robins Co., Inc.*, 727 F.2d 1363, 1367 (5th Cir. 1984))). As previously discussed,

7

"litigants may not use the doctrine to avoid the consequences of their own negligence." *Rogers*, 2015 WL 5772203, at *2. Therefore, Plaintiffs' claims against Armstrong and Edwards should be dismissed on this ground.

### **Qualified Immunity**

Armstrong and Edwards argue that they are entitled to qualified immunity for Plaintiffs' claims against them in their individual capacities. Defs.' Br. 5, ECF No. 71. "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012). Therefore, in deciding "whether a defendant is entitled to qualified immunity, the court begins with the threshold question whether, taken in the light most favorable to plaintiff as the party asserting the injury, the facts he has alleged show that the defendant's conduct violated a constitutional right." *Escobar v. Montee*, No. 3:15-CV-1962-D, 2016 WL 397087, at *3 (N.D. Tex. Feb. 2, 2016) (citing *Ellis v. Crawford*, No. 3:03-CV-2416-D, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005); *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* (citing *Saucier*, 533 U.S. at 201).

"'[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). "Put simply, qualified

8

immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). "'Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable.'" *Escobar*, 2016 WL 397087, at *3 (quoting *Wallace v. Cty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005)). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Id.* (quoting *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992)). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Id.* (citing *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002); *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001)) (internal quotation marks omitted).

Armstrong and Edwards argue that Plaintiffs only make conclusory allegations that are not supported by specific facts. Defs.' Br. 7-8, ECF No. 71. In particular, they argue that Plaintiffs failed to plead facts to dispute Clinton Peterson's failure to comply with the officers' demand to stop and his use of a toy gun that was modified to appear as a real gun. Defs.' Br. 8, ECF No. 71. Plaintiffs' opposition does not address Armstrong and Edwards's qualified immunity argument, but contends that their complaint should not be subject to dismissal, because they provided the defendants with fair notice of their claims. Opp'n 6-7, ECF No. 81.

According to the facts in the Amended Complaint, the roommate of Clinton Peterson's sister believed that his presence on the premises posed a threat serious enough to make a 911 call. Am. Compl. 6, ECF No. 36. With this knowledge, the officers arrived at the scene and encountered an

individual who was actively evading apprehension. Am. Compl. 7-8, ECF No. 36. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Escobar*, 2016 WL 397087, at *5 (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011); *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Although Plaintiffs allege that Clinton Peterson was merely attempting to get away, Plaintiffs failed to allege facts to show that a reasonable officer at the scene would know that he was unarmed and posed no danger to the community, given the fact that they were responding to a 911 call involving him. In construing the facts in a light most favorable to Plaintiffs, the undersigned concludes that Plaintiffs failed to allege facts that would show that "*all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Id.* at *3. Therefore, Armstrong and Edwards's motion to dismiss should also be granted on this ground. *See id.* at *5 ("[T]he mere fact that Escobar was lying on the ground is an insufficient allegation of 'surrender.' This is especially the case given the circumstances-i.e., that Escobar had fled from the police and had stated that [the] officers would have to kill him rather than catch him. And although Escobar contends that he dropped his weapon and was lying flat 'like a parachute man,' he does not contend that Officer Montee knew either of these facts before he decided to release [the canine]. . . . Accordingly, the court concludes that Escobar had failed to plead facts that show that Officer Montee acted unreasonably-and thus violated Escobar's constitutional rights-when he put [the canine] over the fence to apprehend Escobar. To the extent Escobar bases his § 1983 claim on these allegations, the court grants Officer Montee's motion to dismiss based on qualified immunity.").

**Official Capacity Claims**

Armstrong and Edwards argue that Plaintiffs' official capacity claim is nothing more than a claim against the City of Duncanville and should be dismissed as redundant. Defs.' Br. 8, ECF No. 71. Plaintiffs' opposition concedes that this argument "may have limited merit." Opp'n, ECF No. 81 at 7. "When a plaintiff sues a county or municipal official in her official capacity, the county or municipality is liable for the resulting judgment and, accordingly, may control the litigation on behalf of the officer in her official capacity." *Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996). Since Plaintiffs already named the City of Duncanville as a party to this lawsuit, "'no purpose is served by allowing Plaintiffs' duplicative section 1983 official capacity claims against [Armstrong and Edwards] to proceed.'" *Ezell v. Wells*, No. 2:15-CV-83-J, 2015 WL 4191751, at *14 (N.D. Tex. July 10, 2015) (quoting *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *6 (W.D. Tex. Nov. 15, 2006)). Therefore, any such duplicative Section 1983 claims against Armstrong and Edwards, to the extent such claims are alleged by Plaintiffs, should also be dismissed. *See id.* ("Accordingly, the Court grants Swisher County's Motion to Dismiss Plaintiffs' official capacity section 1983 claims against Judge Harold Keeter and Sheriff Burnie Wells. The Court will treat those official capacity claims as claims against Swisher County.").

Section 101.106 of the Texas Civil Practice and Remedies Code provides that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). Therefore, if Plaintiffs are attempting to assert Texas Tort Claims Act claims against Armstrong and Edwards, such claims should also be dismissed. *See* Am. Compl. 14-15, ECF No. 36; *Cunningham v. City of Balch Springs*, No. 3:14-CV-9-L, 2014 WL 4851576, at *7

(N.D. Tex. Sept. 30, 2014) ("The Individual Defendants, as employees of the City, seek dismissal of Plaintiff's state law claims of false arrest and intentional infliction of emotional distress. Because Cunningham filed suit under the Act against the City and the Individual Defendants, the Individual Defendants as employees must be dismissed immediately once the governmental entity files a motion to dismiss. . . . As the City and the Individual Defendants have filed motions to dismiss, dismissal of these claims against the Individual Defendants is mandatory." (citing TEX. CIV. PRAC. & REM. CODE § 101.106(e))).

### Melissa Peterson's Claims

Armstrong and Edwards argue that Melissa Peterson's claims against them should be dismissed, because she lacks standing. Defs.' Br. 9, ECF No. 71. They argue that the right to bring a Section 1983 claim is personal and does not accrue to a relative, and also that she is not within the class of persons with standing to bring a wrongful death claim under Texas law. Defs.' Br. 9, ECF No. 71. Plaintiffs failed to address this argument in their opposition. With respect to Plaintiffs' federal claims, "[c]onstitutional standing requires that the plaintiff personally suffer[] some actual or threatened injury that can fairly be traced to the challenged action and is redressable by the courts." *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007). With respect to Plaintiffs' state law claims, such "[a]n action to recover damages . . . is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." TEX. CIV. PRAC. & REM. CODE § 71.004. Therefore, the claims of Clinton Peterson's sister, Melissa Peterson against Armstrong and Edwards should also be dismissed on this ground.

**RECOMMENDATION**

For the foregoing reasons, the undersigned respectfully recommends that the District Court **GRANT** Armstrong and Edwards's Motion to Dismiss [ECF No. 70].

**SO RECOMMENDED**, this 29th day of December, 2016.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).